IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-00948-PAB-CBS

ANTHONY L. JIMENEZ,
  Plaintiff,
v.

SGT. SARA MARTZ,
SOLANO, and
3 UNKNOWN DOC AGENTS,
  Defendants.[1]

_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

  This civil action comes before the court on Defendants' "Motion to Dismiss" (filed August 12, 2011) (Doc. # 26). Pursuant to the Amended Order of Reference dated June 15, 2011 (Doc. # 12) and the memorandum dated August 12, 2011 (Doc. # 27), the Motion was referred to the Magistrate Judge. The court has reviewed the Motion, Mr. Jimenez' Response (filed September 26, 2011 ) (Doc. # 35), Defendants' Reply (filed October 7, 2011) (Doc. # 36), the pleadings, the entire case file, the proceedings held on August 22, 2011 and February 13, 2012, and the applicable law and is sufficiently advised in the premises.

I.  Statement of the Case

  Mr. Jimenez is currently incarcerated at the Centennial Correctional Facility ("CCF") of the Colorado Department of Corrections ("CDOC") in Cañon City, Colorado. (*See* letter noting change of address (Doc. # 39)). The events underlying the claims in this lawsuit occurred when Mr. Jimenez was incarcerated at the Colorado State Penitentiary ("CSP") of the CDOC. "Mr. Jimenez asserts in his Amended Complaint that Defendant Solano, the property custodian, and Defendant Martz, the CSP property sergeant, violated his Fourteenth

---

[1] On June 9, 2011, Defendant Warden Susan Jones was dismissed as a party to this action. (*See* "Order to Dismiss in Part and to Draw Case to a District Judge and to a Magistrate Judge" (Doc. # 8)).

1

Amendment due process rights by destroying his personal legal property" (two CDs containing documents relevant to his state criminal case and his law dictionary) "without first providing him notice and an opportunity for voluntary disposal." (*See* Doc. # 8 at 2 of 5). "Mr. Jimenez also asserts an equal protection claim." (*See id.*). Mr. Jimenez seeks compensatory, punitive, and nominal damages. (*See* Amended Complaint (Doc. # 7) at 12 of 13).

II.     Standard of Review

Defendants move to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). The burden is on the plaintiff to frame "a complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Twombly*, 127 S.Ct. at 1965. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*.

Because Mr. Jimenez appears *pro se*, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a pro se complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court

may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

III.     Analysis

Mr. Jimenez brings his claims pursuant to 42 U.S.C. § 1983.  (*See* Doc. 3 7 at 4 of 13).  Section 1983 creates a cause of action where a  "person . . . under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges or immunities secured by the Constitution."  Section 1983 does not create any substantive rights; rather, it creates only a remedy for violations of rights secured by federal statutory and constitutional law.  *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979).  *See also Southern Disposal, Inc. v. Texas Waste Management*, 161 F.3d 1259, 1265 (10th Cir. 1998) ("In order to successfully state a cause of action under section 1983, [Mr. Jimenez] must allege . . . the deprivation of a federal right. . . .") (internal quotation marks and citation omitted).  To establish a claim under § 1983, a plaintiff must prove he was deprived of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed under color of law.  *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

A.     Liability of Defendants in their Official Capacities

Mr. Jimenez does not specify whether he sues Defendants in their individual capacities, their official capacities, or both.  (*See* Doc. # 7).  To the extent that Mr. Jimenez is suing Defendants in their official capacities, he is actually attempting to impose liability on their employer, the CDOC.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (suit against a state official in his or her official capacity is treated as a suit against the state).  The CDOC is considered an agency of the State of Colorado.  *See* Colo. Rev. Stat. § 24-1-128.5.  The Eleventh Amendment provides immunity for state governmental entities sued in federal court

for monetary damages under § 1983. *Ambus v. Granite Board of Education*, 995 F.2d 992, 994 (10th Cir. 1993) (citation omitted). The Eleventh Amendment confers total immunity from suit, not merely a defense to liability. *Id.* Further, states and state officials sued in their official capacities are not "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). To the extent that Mr. Jimenez seeks monetary damages against Defendants in their official capacities pursuant to § 1983, such claim is properly dismissed with prejudice. Mr. Jimenez does not seek any specific relief in addition to monetary damages. (*See* Doc. # 7).

B.    Liability of Defendants in their Individual Capacities

The Eleventh Amendment does not bar actions for damages against state officials in their individual capacities. *Kentucky v. Graham*, 473 U.S. 159, 164 (1985). To the extent that Mr. Jimenez is suing Defendants in their individual capacities, personal capacity suits pursuant to § 1983 seek to impose personal liability upon a government official for actions he or she takes under color of state law. *Graham*, 473 U.S. at 165-67. Mr. Jimenez brings one multi-part claim for relief, alleging "officers violated due process, right to appeal, equal protection, self representation, 14th Amendment, 4th, 5th, 6th amend." (*See* Doc. # 7 at 5, 10 of 13).[2] The court proceeds to evaluate whether Mr. Jimenez has stated a claim against Defendants in their individual capacities.

On August 24, 2000, Mr. Jimenez and a co-defendant "picked up a fifteen-year-old girl . . . on a street in Colorado Springs." *People v. Jimenez*, 217 P.3d 841, 849 (Colo. App. 2008). They took her to a campsite "where they held her for two days." The co-defendant "testified that both he and defendant sexually assaulted" her, and that Mr. Jimenez suggested they kill her "because she 'knew too much.'" *Id.* Mr. Jimenez bound her with duct tape, and he and the co-defendant carried her "to a stream where they drowned her." *Id.*

---

[2]    In his Response, Mr. Jimenez also moved "for leave to amend." (*See* Doc. # 35 at 1-2, 9 of 10). At the hearing held on February 13, 2012, Mr. Jimenez clarified that he does not seek to amend his pleading. (*See* Courtroom Minutes/Minute Order (Doc. # 47)).

They then removed her "clothing and jewelry as well as the duct tape, put her body in a sleeping bag, and drove to a small ravine near Trail Creek Road in Teller County, where they left" her body. Mr. Jimenez later led Teller County Sheriff officers to the body. *Id.*

Mr. Jimenez and the co-defendant were charged with first degree murder, kidnapping, sexual assault, and conspiracy. *People v. Jimenez*, 217 P.3d at 849. The prosecution sought the death penalty against both men. *Id.* The co-defendant entered into a plea agreement in which he agreed to plead guilty to second degree murder and second degree kidnapping and to testify truthfully in Mr. Jimenez' trial in exchange for a stipulated sentence of seventy-three years and dismissal of all other charges. *People v. Jimenez*, 217 P.3d at 849. Mr. Jimenez' first trial ended in a mistrial. *Id.* Before Mr. Jimenez' second trial, "the prosecution decided not to seek the death penalty." *Id.* "The jury in the second trial found defendant guilty of the lesser included offense of second degree murder and the lesser nonincluded offense of accessory to a crime, but was unable to reach verdicts on the kidnapping, sexual assault, and conspiracy charges." *People v. Jimenez*, 217 P.3d at 850. The court sentenced Mr. Jimenez "to forty-eight years in the custody of the Department of Corrections on the murder conviction and six years incarceration on the accessory conviction, to be served consecutively." *Id.*

On direct appeal of "the judgment of conviction entered on the jury verdicts finding him guilty of second degree murder and accessory to a crime," the Colorado Court of Appeals affirmed. *People v. Jimenez*, 217 P.3d at 841. The *en banc* Colorado Supreme Court denied Mr. Jimenez' petition for writ of certiorari. *See Jimenez v. People*, 2009 WL 3340164 (Colo. Oct. 19, 2009). Through counsel, Mr. Jimenez filed a petition for postconviction relief pursuant to Crim. P. 35(c). (*See* Teller County District Court Case No. 2000CR178, Colorado State Courts – Data Access; *see also* audio recording of February 13, 2012 Status Conference (at which Mr. Jimenez acknowledged that his Crim. P. 35(c) petition was filed by counsel)). The trial court denied his petition for postconviction relief pursuant to Crim. P. 35(c) on July 8, 2010. (*See* Teller County District Court Case No. 2000CR178, Colorado

State Courts – Data Access).  The denial of Mr. Jimenez' 35(c) petition is currently on appeal.  *See id.*

 Mr. Jimenez alleges that documents from his criminal proceedings were stored on CDs.  (*See* Doc. # 7 at 5 of 13).  He alleges that he was transported to the Teller County Jail on January 22, 2010 and remained there until April 15, 2010.  (*See id.* at 6 of 13).  During that time, Mr. Jimenez' attorney mailed four CDs of legal documents to Mr. Jimenez' wife in Colorado Springs.  (*See id.*).  Mr. Jimenez subsequently received the CDs and a legal dictionary at the Teller County Jail.  (*See id.*).  Mr. Jimenez returned to CSP on April 15, 2010.  (*See id.*).  Defendant Solano was a property custodian at CSP and Defendant Martz was Solano's immediate supervisor.  (*See* Doc. # 7 at 2 of 13).  Defendant Solano took Mr. Jimenez' property from a Corporal at the Teller County Jail and "wrote the inventory on a shakedown slip."  (*See id.* at 6 of 13; Doc. # 1 at 19 of 41; *see also* Property Release Receipt, Teller County Jail (Doc. # 1 at 18 of 41)).  Defendant "Solano informed Mr. Jimenez his legal CDs would go to the law library and the rest of his items would be placed into his property."  (*See* Doc. # 7 at 7 of 13).  Mr. Jimenez wrote "numerous kites. . . inquiring about his legal dictionary."  (*See id.*).  His kites "went unanswered until July 2010," when he received a response "stating he already had the maximum allowed book[s]" and "he would have to mail one home in order to get the dictionary."  (*See id.*).  Mr. Jimenez sent the required paperwork to property with one book to be mailed.  (*See* Doc. # 7 at 7 of 13).  When Mr. Jimenez later inquired about his property, he was informed that there was no property in his name. (*See id.*).  Through the CDOC grievance process, Mr. Jimenez learned in November 2010 that his legal dictionary and CDs had been destroyed on June 2, 2010. (*See* Doc. # 7 at 8 of 13; Doc. # 1 at 29 of 41).  Mr. Jimenez claims that his legal dictionary and CDs were negligently destroyed without proper notice by the property staff at CSP.  (*See id.* 4, 8 of 13).

1.  Fourteenth Amendment, Due Process

"The Fourteenth Amendment provides that no state shall 'deprive any person of life, liberty, or property, without due process of law.' " *Estate of DiMarco v. Wyoming Dept. of Corrections*, 473 F.3d 1334, 1339 (10th Cir. 2007) (quoting U.S. Const. Amend. XIV). "A due process claim under the Fourteenth Amendment can only be maintained where there exists a constitutionally cognizable liberty or property interest with which the state has interfered." *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) (citation omitted). To state a Due Process claim, Mr. Jimenez must allege: (1) the deprivation of a property interest protected by the Due Process Clause; and if so (2) that he was not afforded the appropriate level of process. *Veile v. Martinson*, 258 F.3d 1180, 1184-85 (10th Cir. 2001) (citation omitted).

The Tenth Circuit Court of Appeals "has ruled that property interest claims by prisoners are [ ] to be reviewed under *Sandin's* atypical-and-significant-deprivation analysis." *Steffey*, 461 F.3d at 1221 (citing *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999)) (other citations omitted). *See also Clark v. Wilson*, 625 F.3d 686, 691 (10th Cir. 2010) ("Although *Sandin* addresses liberty interests, we interpret it to extend the same analysis to protected property interest inquiries.") (citation omitted). "The Supreme Court mandate since *Sandin* is that henceforth we are to review property and liberty interest claims arising from prison conditions by asking whether the prison condition complained of presents 'the type of atypical, significant deprivation in which a State might conceivably create a liberty [or property] interest.' " *Cosco*, 195 F.3d at 1224 (alteration in original, quoting *Sandin v. Conner*, 515 U.S. 472, 486 (1995)). Whether confinement "conditions impose such an atypical and significant hardship that a liberty interest exists is a legal determination. . . ." *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997) (citing *Sandin*, 515 U.S. at 485-87).

First, the deprivation Mr. Jimenez alleges does not constitute an "atypical or significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Prison officials retain broad discretion to devise regulations concerning the amount and type of personal property that an inmate may possess in prison. *Williams v. Milyard*, 2011 WL

4102336, at * 3 (D. Colo. Sept. 14, 2011) (quoting *Georgacarakos v. Wiley*, 2011 WL 940803, at * 9 (D. Colo. March 16, 2011) ("As cases like *Cosco [v. Uphoff*, 195 F.3d 1221 (10th Cir.1999)] make clear, prison officials are granted broad discretion in deciding how much and what kinds of personal property inmates can possess, and in the absence of evidence that the [prison's] policies applicable to the Plaintiff are so extreme and parsimonious that they fall outside the scope of typical prison property rules, the inquiry ends there.").[3] The regulation of type and quantity of individual possession in prison reflects a typical type of restraint imposed on the prison population. *See Searcy v. Simmons*, 299 F.3d 1220, 1229 (10th Cir. 2002) (approving federal prison regulations providing for the destruction of property in the absence of a mailing address for the return of the seized property). "[T]he requirements of procedural due process were met when the prison authorities provided [the prisoner plaintiff] the opportunity to dictate where to send the property" that the authorities had confiscated." *Id. See also Cosco*, 195 F.3d at 1224 (permanent separation of an inmate from his property did not amount to an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life); *Maberry v. McKune*, 24 F. Supp. 2d 1222, 1228-1229 (D. Kan. 1998) (regulation which imposed quantity and value limitations on property which inmates were allowed to possess did not violate equal protection or due process).

Second, to the extent Mr. Jimenez' claim is based on an alleged procedural due process violation under the Fourteenth Amendment for the deprivation of his property, it is well settled that

> an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available. For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy.

*Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Mr. Jimenez does not allege that he was

---

[3] Copies of unpublished decisions cited are attached to this Recommendation.

denied a meaningful post-deprivation state remedy. Mr. Jimenez in fact alleges that he utilized the prison grievance procedures. (*See* Doc. # 7 at 8 of 13). "The Supreme Court has indicated that adequate inmate grievance procedures alone may provide a meaningful postdeprivation remedy for purposes of procedural due process." *Klein v. McClaury*, 221 F.3d 1352, at * 2 (10th Cir. July 20, 2000) (citing *Hudson*, 468 U.S. at 536 n. 15). Mr. Jimenez also argues that he "filed with the Attorney General a statutory notice of intent CRS 24-10-109, . . ." (*See* Doc. # 35 at 9 of 10). Mr. Jimenez' claim for violation of his due process rights is properly dismissed for failure to state a claim upon which relief can be granted because he has not alleged that an adequate postdeprivation remedy was unavailable to him. Mr. Jimenez' asserted property deprivation is properly addressed by following his postdeprivation remedies, including prison grievance procedures and the Colorado Governmental Immunity Act, Colo. Rev. Stat. §§ 24-10-101 *et seq*. *See Elliott v. Cummings*, 49 F. App'x 220, 228 (10th Cir. Oct. 9, 2002) ("Either the prison grievance procedures, which [Mr. Jimenez] pursued, or a state law claim . . . which [Mr. Jimenez] presumably could pursue, provides an adequate post-deprivation remedy, such that his federal constitutional claim is subject to dismissal.") (citations omitted).

    2.    Fourteenth Amendment, Equal Protection

The Equal Protection Clause of the Fourteenth Amendment requires that no state deny any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV. The fundamental guarantee of the Equal Protection Clause is that "all persons similarly situated shall be treated alike." *City of Cleburne Texas v. Cleburne Living Center,* 473 U.S. 432, 439 (1985). The Equal Protection Clause does not forbid classifications, but simply prevents government decision makers from treating differently persons who are in all relevant respects alike. *Juarez v. Renico,* 149 F. Supp. 2d 319, 324 ( E.D. Mich. 2001). To properly allege an equal protection claim, a plaintiff must plead sufficient facts to "demonstrate that he has been treated differently from others with whom he is similarly situated and that the

unequal treatment was the result of intentional or purposeful discrimination." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002). *See also Harris v. McRae*, 448 U.S. 297, 323 n. 26 (1980) (the challenged disparate treatment must be the result of purposeful discrimination); *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000) ("To state a prima facie claim under the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must demonstrate that (1) he is otherwise similarly situated to members of the unprotected class; (2) he was treated differently from members of the unprotected class; and (3) the defendant acted with discriminatory intent.").

First, Mr. Jimenez has not adequately alleged that he was treated differently than any similarly situated persons. *See Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1988) ("In order to assert a viable equal protection claim, [Mr. Jimenez] must first make a threshold showing that [he was] treated differently from others who were similarly situated to [him]."). "Absent a threshold showing that [he] is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim." *Klinger v. Department of Corrections*, 31 F.3d 727, 731 (8th Cir. 1994). An equal protection claim is entirely conclusory and without merit where a plaintiff fails to allege facts that he was treated differently than those similarly situated. *Cosco*, 195 F.3d at 1222. Second, Mr. Jimenez does not allege that Defendants acted based upon a discriminatory intent or motive. *See Watson v. City of Kansas City, Kansas*, 857 F.2d 690, 694 (10th Cir. 1996) ("A plaintiff in an equal protection action has the burden of demonstrating discriminatory intent") (citations omitted); *Villanueva v. Carere*, 85 F.3d, 481, 485 (10th Cir. 1996) (Although "[t]he discriminatory purpose need not be the only purpose, . . . it must be a motivating factor in the decision"). *See also Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) ("To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.") (citations omitted).

To the extent that Mr. Jimenez argues that Defendants "clearly discriminated against the plaintiff based upon his on-going status as a mentally challenged/disabled inmate (Complaint pg. 3) and as a pro se litigant serving 50+ year sentence," (*see* Doc. # 35 at 6 of 10), the Supreme Court explained in *City of Cleburne* that under the Equal Protection Clause of the Fourteenth Amendment, the mentally disabled are neither a suspect nor a quasi-suspect class. 473 U.S. at 442-47. *See also Brown v. North Carolina Dep't of Motor Vehicles*, 166 F.3d 698, 706 (4th Cir. 1999) (extending *Cleburne* to all disabled individuals); *Lavia v. Commonwealth of Pennsylvania, Dept. of Corrections*, 224 F.3d 190, 199 (3rd Cir. 2000) (mentally disabled are neither a suspect nor a quasi-suspect class); *United States v. Harris*, 197 F.3d 870, 876 (7th Cir. 1999) (the disabled, including the mentally disabled, "are not a suspect or quasi-suspect class"). Nor are inmates, indigents, or pro se litigants a suspect class for purposes of equal protection analysis. *See Curley v. Perry*, 246 F.3d 1278, 1285, n. 5 (10th Cir. 2001) (prisoners, like indigent plaintiffs, do not constitute a suspect class"); *Larson v. Goodman*, 2010 WL 4537932, at * 1 (D. Minn. Nov. 3, 2010) ("No court has recognized, for the purposes of a constitutional claim, a suspect class consisting of pro se litigants, . . ."). In any event, without any allegations that he was treated differently than other similarly situated persons or that Defendants acted with a discriminatory motive regarding the destruction of his property, Mr. Jimenez fails to state an equal protection claim.

3.   Fourth Amendment

To the extent that Mr. Jimenez alleges a claim under the Fourth Amendment, the Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. CONST. Amend. VIII. Prisoners are not protected under the Fourth Amendment from unreasonable searches of their prison cells or from the wrongful seizure of property contained in their cells because "the Fourth Amendment does not establish a right to privacy in prisoners' cells." *Hayes v. Marriott*, 70 F.3d 1144, 1146 (10th Cir.1995) (citation omitted). "That the Fourth

Amendment does not protect against seizures in a prison cell does not mean that an inmate's property can be destroyed with impunity." *Hudson*, 468 U.S. at 528 n. 8. "[E]ven apart from inmate grievance procedures, . . . respondent has adequate state remedies for the alleged destruction of his property." *Id.* As Mr. Jimenez' asserted property deprivation is properly addressed by following his postdeprivation remedies, including prison grievance procedures and the Colorado Governmental Immunity Act, Colo. Rev. Stat. §§ 24-10-101 *et seq.*, which he has pursued or could pursue, his claim under the Fourth Amendment is properly dismissed for failure to state a claim for which relief can be granted.

4.  Negligence

Mr. Jimenez alleges that his property was destroyed due to the Defendants' negligence and incompetence. (*See* Doc. # 7 at 4, 8 of 13). Claims of § 1983 liability may not be predicated on negligence. *Daniels v. Williams*, 474 U.S. 327, 330, 106 S. Ct. 662 (1986). *See also Medina v. City and County of Denver*, 960 F.2d 1493, 1500 (10th Cir. 1992) ("negligence and gross negligence do not give rise to section 1983 liability"); *Hudson*, 468 U.S. at 533 (negligent deprivations of property do not violate the Due Process Clause). To the extent Mr. Jimenez alleges that Defendants acted negligently, he has not stated a claim upon which relief can be granted.

5.  Fifth Amendment

To the extent that Mr. Jimenez allege violation of his Fifth Amendment rights, the Due Process Clause of the Fifth Amendment protects against due process violations by the federal government. *See Public Utilities Comm'n v. Pollak*, 343 U.S. 451, 461 (1952) (Fifth Amendment applies to and restricts only the Federal Government and not private persons). There is no allegation in this civil action of any conduct by federal government actors. The prison where the events occurred is a state facility and Defendants are or were state employees. As none of the Defendants are subject to the due process clause of the Fifth

Amendment, Mr. Jimenez fails to state a Fifth Amendment claim.

      6.      Sixth Amendment

Mr. Jimenez appears to allege violation of his Sixth Amendment rights. (*See* Doc. # 7 at 4 of 13 ¶ 2, 10 of 13 (simply listing "Amendment . . . 6th")). The Sixth Amendment provides certain rights "[i]n all criminal prosecutions." U.S. CONST. Amend. VI. Mr. Jimenez alleges he "is forced to proceed pro se in his post conviction relief." (*See* Doc. # 7 at 5 of 13). However, a defendant does not have a federal or state constitutional right to counsel in Crim. P. 35 postconviction proceedings. *People v. Starkweather*, 159 P.3d 665, 667 (Colo. App. 2006). Further, Mr. Jimenez later clarified that counsel filed his Crim. P. 35(c) petition. (*See* audio recording of February 13, 2012 Status Conference). Mr. Jimenez fails to state a claim for violation of his Sixth Amendment rights.

      7.      Right to Appeal and Self Representation

Mr. Jimenez alleges that the destruction of his legal CDs hindered his ability to represent himself and appeal his post-conviction petition. (*See* Doc. # 7 at 5 of 13). Mr. Jimenez alleges that he proceeded *pro se* on appeal of his post-conviction petition, filing motions and briefs. (*See* Doc. # 7 at 4-5 of 13; *see also* Teller County District Court Case No. 2000CR178, Colorado State Courts – Data Access). Mr. Jimenez alleges that he did not have access to his legal dictionary and CD's after they were destroyed on June 2, 2010. However, Mr. Jimenez' petition for postconviction relief and notice of appeal of the denial of the petition were filed on June 9, 2010 and August 19, 2010, several months before Mr. Jimenez alleges that he learned (on November 10, 2010) that his property had been destroyed. (*See* Doc. # 7 at 8 of 13; Teller County District Court Case No. 2000CR178, Colorado State Courts – Data Access).

To the extent that Mr. Jimenez may be alleging denial of access to the courts, prison inmates have a constitutional right to meaningful access to the courts. *Bounds v. Smith*, 430

U.S. 817, 823 (1977). "[P]rison officials may not affirmatively hinder a prisoner's efforts to construct a nonfrivolous appeal or claim." *Green v. Johnson*, 977 F.2d 1383, 1389 (10th Cir. 1992). "Any deliberate impediment to access [to the courts], even a delay of access, may constitute a constitutional deprivation." *Id.* (internal quotation marks and citation omitted).[4]

To state a violation of his right of access to the courts, Mr. Jimenez must plead and prove that he was actually impeded in his ability to conduct a particular case. *See Lewis v. Casey*, 518 U.S. 343, 348-55 (1996) (To plead a violation of this right, a plaintiff must allege that the state's interference with his mail led to an "actual injury" by "frustrat[ing]," "imped[ing]," or "hinder[ing] his efforts to pursue a legal claim."). In order to satisfy the actual injury requirement, the plaintiff must show that prison officials frustrated or impeded the plaintiff's ability to file non-frivolous direct appeals from his conviction, a habeas corpus petition or a civil rights claim pursuant to § 1983 "to vindicate basic constitutional rights." *Lewis*, 518 U.S. at 351, 354-55 (internal quotation marks and citation omitted). *See also Peterson v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998) ("To present a viable claim for denial of access to courts, however, an inmate must allege and prove prejudice arising from Defendants' actions."); *Smith v. Maschner*, 899 F.2d at 944 (an inmate alleging interference with legal access must allege specific facts showing that a "distinct and palpable" injury resulted from defendants' conduct.).

Mr. Jimenez does not adequately allege that his access to the courts was impaired or that he suffered any actual injury due to the destruction fo his property. Mr. Jimenez filed a

---

[4] An allegation of denial of access to the courts is viewed as an aspect of the freedom of petition clause of the First Amendment, *Harrison v. Springdale Water and Sewer Comm'n*, 780 F.2d 1422, 1427 n. 7 (8th Cir. 1986), as guaranteed by the Fourteenth Amendment. *See Bounds v. Smith*, 430 U.S. at 822 (Due Process Clause of the Fourteenth Amendment guarantees state inmates the right to "adequate, effective, and meaningful" access to the courts.). *See also Green*, 977 F.2d at 1389 ("The constitutional right of access to the courts is guaranteed by the Due Process Clause[ ] of the . . . Fourteenth Amendment[ ]."); *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) ("the right of access is founded on the due process clause and guarantees the right to present to a court of law allegations concerning the violation of constitutional rights."); *Nordgren v. Milliken*, 762 F.2d 851, 853 (10th Cir. 1985) (prisoner's constitutional right of access to the courts is accorded by article 4 of the Constitution and the Fourteenth Amendment, as well as by the First Amendment right to petition).

motion for postconviction relief through counsel in the trial court and appealed its denial *pro se*. Other than a conclusory allegation that his property "had hundreds of thousands of pages of documents, sealed documents, doctors['] reports of various fields etc." (*see* Doc. # 7 at 5 of 13), Mr. Jimenez' allegations do not specifically connect the destroyed property to any issues raised in his appeal of the denial of his postconviction motion. Mr. Jimenez provides no information about the nature of the nonfrivolous legal claims he is pursuing on appeal. Mr. Jimenez does not allege that he missed any deadlines due to the destruction of his property. The docket indicates that Mr. Jimenez filed numerous motions and briefs in his appeal since June 2, 1010. (*See* Doc. # 7 at 5 of 13; Teller County District Court Case No. 2000CR178, Colorado State Courts – Data Access). "[A]n isolated incident, without any evidence of improper motive or resulting interference with [Mr. Jimenez'] right to counsel or to access to the courts, does not give rise to a constitutional violation." *Smith v. Maschner*, 899 F.2d at 944. Mr. Jimenez' allegations and arguments are too conclusory to state or support a plausible claim that he was impeded in his effort to pursue a nonfrivolous legal claim on appeal. "[C]onclusory allegations are not sufficient to state a constitutional violation." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (citation omitted). Mr. Jimenez' claims regarding "Right to Appeal" and "Self Representation" are properly dismissed for failure to state a claim for which relief can be granted.

8. Qualified Immunity

Defendants in their individual capacities raise the defense of qualified immunity to Mr. Jimenez' claims. Whether a defendant is entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

> Resolution of a dispositive motion based on qualified immunity involves a two-pronged inquiry. First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, . . . the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation

marks and citations omitted). "A reviewing court may exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*. "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry. *Id*.

As the court has concluded in this Recommendation that Mr. Jimenez fails to state any constitutional violation by Defendants, the court need not reach the "clearly established" prong of qualified immunity to conclude that dismissal is correctly granted in favor of Defendants. *See Wilder*, 490 F .3d at 815 (instructing district court on remand to enter judgment in favor of defendant on basis of qualified immunity, where plaintiff failed to carry his burden to show violation of a constitutional right). Defendants in their individual capacities are entitled to qualified immunity from Mr. Jimenez' claims.

9. Defendants "3 Unknown DOC Agents"

As to the unnamed Defendants, there is no provision in the Federal Rules of Civil Procedure for the naming of fictitious or anonymous parties in a lawsuit. *Watson v. Unipress, Inc.*, 733 F.2d 1386, 1388 (10th Cir. 1984); *Coe v. U.S. Dist. Court for Dist. of Colorado*, 676 F.2d 411, 415 (10th Cir. 1982). To the contrary, the Federal Rules provide that "[e]very pleading must have a caption with the court's name, a title, a file number, and a Rule 7(a) designation. The title of the complaint must name all the parties; . . ." Fed. R. Civ. P. 10(a). Anonymous parties are not permitted by the Federal Rules and Mr. Jimenez has not identified them. For this reason, and based upon Mr. Jimenez' failure to state any claim for which relief can be granted under § 1983, Defendants "3 Unknown DOC Agents" are properly dismissed from this civil action.

Accordingly, IT IS RECOMMENDED that Defendants' "Motion to Dismiss" (filed August 12, 2011) (Doc. # 26) be GRANTED and this civil action be dismissed in its entirety for failure to state a claim upon which relief can be granted. Because the legal deficiencies

in Mr. Jimenez' pleading cannot be cured by amendment, the court recommends that this civil action be dismissed with prejudice.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 23rd day of February, 2012.

BY THE COURT:

 s/ Craig B. Shaffer
United States Magistrate Judge